UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-6673 CAS (SSx) | Date | August 2, 2010 |
|---|---|---|---|
| Title | BIRCHCREST MARKETING, INC. v. AKZAN DISTRIBUTING CO., INC.; ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| CATHERINE JEANG | GARY GEORGE | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Bradley Fell | John Yates |

**Proceedings:**  **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
(filed 06/29/10)

## I.  INTRODUCTION & BACKGROUND

On September 14, 2009, plaintiff Birchcrest Marketing ("Birchcrest") filed its complaint against defendants Akzan Distributing Co., Inc. ("Akzan"), Rubitime California, Inc. ("Rubitime California"), and Rubitime, Inc. d/b/a Quemex ("Rubitime") alleging fraudulent transfer pursuant to Cal. Civ. Code § 3439.05 and intent to defraud a creditor pursuant to Cal. Civ. Code § 3439.04.  On April 23, 2010, Birchcrest filed its first amended complaint ("FAC"), adding Noorali Chagany ("Chagany") and Zohra Chagany as defendants.

Birchcrest's claims arise from a payment made in 2002 from defendant Rubitime to defendant Chagany, who was then president of Rubitime.[1]  Plaintiff's Statement of

---

[1] Rubitime is a watch wholesale company that operated in Los Angeles until about 2005, when it was replaced by Rubitime California.  Chagany Decl. ¶ 15.  Both Rubitime and Rubitime California were owned in some capacity by the family of Abdul Sultan Jamal.  Id. ¶ 4.  Based on the record, it is not clear which family member officially owned the companies or where the family is currently located, except that they most likely reside overseas.  See Fell Decl. at Exs. B & H.  A Florida-based company, Apollo Trade & Technology, Inc., may also have had an ownership interest in Rubitime California. Chagany Decl. ¶ 19.  Both Rubitime companies have since dissolved, Rubitime California in 2008 and Rubitime in 2009.  Declaration of John Yates ("Yates Decl.") at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-6673 CAS (SSx) | Date | August 2, 2010 |
|---|---|---|---|
| Title | BIRCHCREST MARKETING, INC. v. AKZAN DISTRIBUTING CO., INC.; ET AL. | | |

Additional Undisputed Facts ("PSAUF") ¶¶ 1-6. As president, Chagany ran Rubitime's operations and received a monthly salary plus profit participation at the end of each year. Declaration of Noorali Chagany ("Chagany Decl.") ¶ 5; Declaration of John Yates ("Yates Decl.") at Ex. 1. On August 21, 2001, in his capacity as president, Chagany signed a contract with Birchcrest wherein Rubitime retained Birchcrest as a sales representative to Kmart. PSAUF ¶¶ 1-3; Declaration of Bradley Fell ("Fell Decl.") at Exs. A & B. Pursuant to the contract, Rubitime agreed to pay Birchcrest a commission of 35 cents on each Rubitime watch sold by Kmart. Fell Decl. at Ex. A. In February 2002, after Birchcrest had secured a deal with Kmart, Kmart filed for bankruptcy and failed to pay Rubitime for the watches it had sold. PSAUF ¶ 4; Fell Decl. at Exs. B & C. The record does not indicate how much Rubitime lost, but Chagany estimated that the loss was above $100,000. Fell Decl. at Ex. B. Chagany also recalls that "the money was not good" when he began working in 1999 and "there was not enough money" in 2002. Id. In the end of 2002, Chagany resigned from Rubitime. Chagany Decl. ¶ 8. Pursuant to his employment contract with Rubitime, Chagany then received $5,000 to $10,000 as his profit participation for 2002, which is the sum now in dispute. Id. ¶ 8; Opp'n at 7. On October 21, 2008, Birchcrest obtained a default judgment against Rubitime in the U.S. District Court in the Eastern District of Michigan in the amount of $196,840.80 for unpaid commissions on watches sold by Kmart.[2] PSAUF ¶ 5; Fell Decl. at Ex. C.

Noorali and Zohra Chagany currently own and operate another watch wholesaler, defendant Akzan, which they opened in 2004.[3] Chagany Decl. ¶¶ 12, 20. Zohra Chagany is the owner and Chagany runs the business's operations. Id.; Declaration of Zohra Chagany ("Zohra Chagany Decl.") ¶ 4. Both maintain that neither of them has had any

---

Exs. 3-4.

[2] Birchcrest is seeking to recover from defendants Chagany, Zohra Chagany and Akzan the full amount from the Michigan judgment, i.e. $198,840.80. FAC at 6:1-3.

[3] Prior to opening Akzan, Chagany owned two other watch wholesale companies, Azkan U.S.A. and Akzan California, Inc. ("Akzan California"). Chagany Decl. ¶ 9. Akzan was initially located on Pico Boulevard in Los Angeles. Id. ¶ 19. In 2008, after Rubitime California closed, Akzan moved from its Pico location to Rubitime and Rubitime California's former location at 1242 South Hill Street. Id. ¶¶ 9-10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-6673 CAS (SSx) | Date | August 2, 2010 |
|---|---|---|---|
| Title | BIRCHCREST MARKETING, INC. v. AKZAN DISTRIBUTING CO., INC.; ET AL. | | |

business relationship with Rubitime or Rubitime California since Chagany resigned in 2002 and that neither of them ever had any ownership interest in either Rubitime company. Chagany Decl. ¶ 19; Fell Decl. at Ex. B; Zohra Chagany Decl. ¶ 5. Birchcrest disputes this assertion, arguing that there is a triable issue of fact as to whether Chagany had an ownership interest in Rubitime because Chagany received profits from the company through his profit participation and represented himself to buyers as the company's owner. Opp'n at 6; see Fell Decl. at Ex. B.

On June 29, 2010, defendants Akzan, Chagany, and Zohra Chagany filed the instant motion for summary judgment. On July 15, 2010, Birchcrest filed its opposition. On July 19, 2010, defendants filed a reply. After carefully considering the arguments set forth by the parties, the Court finds and concludes as follows.

## II.   LEGAL STANDARD

### A.   Summary Judgment

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. See Fed. R. Civ. P. 56(c). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex Corp., 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-6673 CAS (SSx) | Date | August 2, 2010 |
|---|---|---|---|
| Title | BIRCHCREST MARKETING, INC. v. AKZAN DISTRIBUTING CO., INC.; ET AL. | | |

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## III. DISCUSSION

Birchcrest asserts two claims against defendants under the Uniform Fraudulent Transfer Act ("UFTA"): fraudulent transfer pursuant to Cal. Civ. Code § 3439.05 and intent to defraud a creditor pursuant to Cal. Civ. Code § 3439.04. FAC at 4:7-8, 5:8-9. Birchcrest contends that the transfer of $5,000 to $10,000 from Rubitime to Chagany in the end of 2002 constituted a fraudulent transfer under the UFTA. Opp'n at 7. Defendants filed the instant motion for summary judgment on the ground that as a matter of law neither claim can be sustained because there was no transfer as defined by the UFTA. Mot. at 5.

The UFTA defines the term "asset," in relevant part, as "property of a debtor," not including "[p]roperty to the extent it is generally exempt under nonbankruptcy law." Cal. Civ. Code § 3439.01(a). Pursuant to California Wage Garnishment Law, earnings—defined as "compensation payable by an employer to an employee for personal services performed by such employee, whether denominated as wages, salary, commission, bonus, or otherwise"—are exempt and cannot be withheld by an employer for payment of a debt. Cal. Code of Civ. P. §§ 706.011, 706.020. Thus, wages or earnings owed to employees by an employer are not considered an asset pursuant to the UFTA.

A transfer, as defined by the UFTA, is "every mode . . . of disposing of or parting with an asset or an interest in an asset." Cal. Civ. Code § 3439.01(i).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-6673 CAS (SSx) | Date | August 2, 2010 |
|---|---|---|---|
| Title | BIRCHCREST MARKETING, INC. v. AKZAN DISTRIBUTING CO., INC.; ET AL. | | |

### A. Cal. Civ. Code § 3439.05

Cal. Civ. Code § 3439.05 provides that:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

As defined by the UFTA, a claim is "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Cal. Civ. Code §3439.01(b). Accordingly, a claim for fraudulent transfer requires (1) a transfer after the right to payment arose; (2) insolvency at the time of or due to transfer; and (3) lack of fair consideration for the transfer. Cal. Civ. Code § 3439.05.

Defendants argue that the money Chagany received in 2002 was his earnings, and therefore not Rubitime's asset under the UFTA. Mot at 5-6 (citing Cal. Code of Civ. P. § 706.011). Defendants contend that because the money Chagany received was not Rubitime's asset and a transfer requires disposal of an asset, the transaction was not a transfer within the meaning of the UFTA. Id. at 6 (citing Cal. Civ. Code § 3439.01(i)).

Birchcrest responds that the sum paid to Chagany was Rubitime's profit, which it argues is distinct from a wage. Opp'n at 6. Birchcrest argues that as company profit, the sum was an asset as defined by the UFTA and thus the transaction was a transfer. Id.

Defendants reply that a profit share may be a wage or earning within the meaning of the statute. Reply at 1 (citing In re Carter, 182 F.3d 1027, 1032-33 (9th Cir. 1999) ("The . . . argument that net profits cannot be earnings is incorrect.")). Moreover, defendants argue that even if the payment was a transfer, Birchcrest's claim fails because it cannot establish either that the sum was an unreasonable exchange for Chagany's services or that Rubitime was insolvent at the time of or due to the transfer. Id. at 2-3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-6673 CAS (SSx) | Date | August 2, 2010 |
|---|---|---|---|
| Title | BIRCHCREST MARKETING, INC. v. AKZAN DISTRIBUTING CO., INC.; ET AL. | | |

The Court concludes that Birchcrest has failed to raise a triable question of fact as to all elements of its claim for fraudulent transfer. As to the first element, Birchcrest has raised a question of fact regarding whether its claim for the commissions pursuant to the contract arose before the 2002 transaction. The record indicates that Kmart had sold watches in connection with the contract between Rubitime and Birchcrest before the end of 2002 and that Rubitime failed to pay Birchcrest the commissions owed. See Fell Decl. at Exs. B & C. However, Birchcrest has not presented any evidence to support its contention that the sum was not exempt as an earning within the meaning of Cal. Code of Civ. P. § 706.011(a). The only support Birchcrest provides for this claim is that the amount came from a profit participation agreement, which does not bear on whether it was an 'earning.' See Opp'n; Cal. Code of Civ. P. § 706.011(a); In re Carter, 182 F.3d at 1032-33. Furthermore, Birchcrest has presented no evidence to raise a question of fact regarding whether the exchange was made without reasonable consideration or that it resulted in Rubitime's insolvency. Accordingly, the Court hereby GRANTS defendants' motion for summary judgment on Birchcrest's first claim.

**B.    Cal. Civ. Code § 3439.04**

Cal. Civ. Code § 3439.04 provides:

> (a)    A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:
>   (1)    With actual intent to hinder, delay, or defraud any creditor of the debtor.
>   (2)    Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:
>     (A)    Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.
>     (B)    Intended to incur, or believed or reasonably

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-6673 CAS (SSx) | Date | August 2, 2010 |
|---|---|---|---|
| Title | BIRCHCREST MARKETING, INC. v. AKZAN DISTRIBUTING CO., INC.; ET AL. | | |

should have believed that he or she would incur, debts beyond his or her ability to pay.

A claim for transfer with intent to defraud thus requires (1) a transfer (2) with intent to hinder, delay, or defraud, (3) without reasonable consideration (4) for an amount the debtor could not reasonably afford. To determine actual intent, statute points to the following factors, among others: whether the transfer was to an insider, whether the debtor retained control of the property or had been threatened with legal action prior to the transfer, whether the transfer or other assets were concealed, and whether the debtor became insolvent as a result of the transfer. Cal. Civ. Code § 3439.04(b).

As a preliminary matter, the parties reassert their arguments about whether the payment was a transfer of an asset as defined by the UFTA. Mot. at 7-8; Opp'n at 5-6. Birchcrest further contends that in taking the $5,000 to $10,000 from Rubitime, Chagany "was taking 'assets' that should have been paid" to Birchcrest. Opp'n at 7. Birchcrest argues that "because Noorali Chagany knew he was taking money [owed] to a creditor (Birchcrest) he intentionally defrauded a creditor and is therefore subject to" Cal. Civ. Code § 3439.04. Id. Defendants respond that Birchcrest has presented no evidence that Rubitime intended to hinder, delay, or defraud Birchcrest by transferring the money to Chagany, that Chagany's services were not reasonably worth $5,000 to $10,000, or that Rubitime was unable to pay the amount. Reply at 3.

For the reasons set forth above, the Court concludes that Birchcrest has not put forth evidence that raises a question of fact as to whether the 2002 transaction was a transfer within the meaning of the UFTA. Furthermore, the Court finds no evidence in the record to raise a triable issue as to whether the transaction was made with the intent to hinder, delay, or defraud. The assertion that the transfer was fraudulent because Chagany knew Rubitime owed Birchcrest money pursuant to the 2001 contract cannot support a finding that he intended to defraud Birchcrest under the UFTA. See Cal. Civ. Code § 3439.04(b). Similarly, Birchcrest has not presented evidence to raise a question of fact regarding whether the amount was beyond Rubitime's ability to pay at the time. The only indication that the sum was unreasonable in relation to Rubitime's assets is Chagany's statements about the financial health of the company. First, his recollection that Rubitime lost over $100,000 does not raise a question of fact as to whether it could afford to pay Chagany $5,000 to $10,000 given that the record does not indicate the size

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-6673 CAS (SSx) | Date | August 2, 2010 |
|---|---|---|---|
| Title | BIRCHCREST MARKETING, INC. v. AKZAN DISTRIBUTING CO., INC.; ET AL. | | |

of Rubitime's assets before or after the loss in connection with Kmart's bankruptcy. See Fell Decl. at Ex. B. Chagany's statements that "the money was not good" and that "there was not enough money" when he left in 2002 are similarly too vague to raise a issue regarding whether the $5,000 to $10,000 was unreasonable in relation to Rubitime's assets, especially given that Chagany does not have specific, personal knowledge about Rubitime's finances. See id. Finally, Birchcrest has not presented any evidence that the amount was an unreasonable exchange for Chagany's services. Thus, Birchcrest has not raised a question of fact on its second claim. Accordingly, the Court hereby GRANTS defendants' motion for summary judgment on Birchcrest's second claim.[4]

---

[4] Birchcrest also requests additional time for discovery to determine the actual ownership of Rubitime and Rubitime California, including whether Chagany had an
(footnote 4 continued)
ownership interest in the companies, and to obtain the companies' financial records. Opp'n at 7-9. Birchcrest asserts that defendants have failed to provide the names and addresses of the actual owners of Rubitime and Rubitime California, making it impossible for Birchcrest to obtain documentation regarding the ownership of the companies or evidence to support its claims of fraudulent transfer. Id. at 8. However, the Court notes that on January 15, 2010, defendants identified Amin Jamal, Abdul Sultan Jamal's son and former vice president of Rubitime, as an individual with information on any transfers from Rubitime or Rubitime California and provided Birchcrest with his address and phone number in Hong Kong. Fell Decl. at Ex. F; Chagany Decl. ¶ 5. There is no indication that plaintiffs contacted or attempted to contact Amin Jamal. Furthermore, on March 1, 2010, defendants provided Birchcrest with over 6,000 pages of financial documents from Akzan and Akzan California dating from January 2004. Yates Decl. ¶ 5. These documents included Akzan and Akzan California's bank statements from January 2004 through December 2009, Akzan's general ledger from January 2005 through December 2009, and the companies' federal tax returns for 2004 through 2008. Id. On July 14, 2010, defendants also provided Birchcrest with the Chagany and Zohra Chagany's personal bank statements from December 2009 through July 2010. Id. at 6. The Court concludes that defendants provided Birchcrest with information in sufficient time to enable Birchcrest to discover Rubitime's financial information and ownership before the discovery cut-off, June 30, 2010. It appears that Birchcrest did not diligently pursue discovery – which, even if granted, appears not to defeat summary judgment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-6673 CAS (SSx) | Date | August 2, 2010 |
|---|---|---|---|
| Title | BIRCHCREST MARKETING, INC. v. AKZAN DISTRIBUTING CO., INC.; ET AL. | | |

## IV.  CONCLUSION

In accordance with the foregoing, the Court hereby GRANTS defendants' motion for summary judgment in its entirety.

IT IS SO ORDERED.

|  | 00 | : | 13 |
|---|---|---|---|
| Initials of Preparer | | | CMJ |

---

Accordingly, the Court declines to allow additional time for discovery.